**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Yorluis Briceno Garcia,<br><br>*Plaintiff*,<br><br>v.<br><br>Samuel Olson, Immigration and Customs Enforcement and Removal Operations Field Office Director, *et al.*,<br><br>*Defendants*. | No. 26 CV 13301<br><br>Judge Lindsay C. Jenkins |

## ORDER

Petitioner Yorluis Briceno Garcia is a native and citizen of Venezuela. He was paroled into the United States in March 2023 at the border near El Paso, Texas and served with a Notice to Appear. [Dkt. 9-1.] After failing to appear at an immigration hearing in Chicago on June 15, 2026, an immigration judge ordered him removed *in absentia*. [Dkt. 9-2.] In July 2026, Briceno Garcia moved to reopen the proceedings, which was denied. [Dkts. 9-3, 9-4.] He appealed the denial to the Board of Immigration Appeals, which remains pending. [Dkt. 9-5.]

Briceno Garcia appeared at a check-in appointment in Chicago on September 22, 2026, and Enforcement and Removal Operations ("ERO") placed him on an Order of Supervision. [Dkt. 9-6.] About a month later, on October 28, 2026, ERO arrested him and served him with a notice of termination of parole, an I-200 warrant of arrest, and an I-205 warrant of deportation. [Dkt. 9-7, 9-8.] The following day, it served him with a Notice of Revocation of the Order of Supervision, advising him that ICE was seeking to effectuate his removal to Venezuela. [Dkt. 9-9.] He then filed this writ of habeas corpus under 28 U.S.C. § 2241.

According to Briceno Garcia, this series of events thwarted his due process rights, in part because the revocation order was not issued until the day after he was taken into custody. [Dkt. 9-9 (order dated October 29, 2026).] He also notes that he was scheduled for a USCIS interview on November 2 regarding his application for adjustment of status based on a visa petition filed by his wife, who is a U.S. Citizen. [Dkt. 10 at 7.] This application, he says, presented a real possibility of adjustment of status to that of lawful permanent resident. [*Id.*]

*Jurisdiction*

The government first argues that 8 U.S.C. § 1252(g) bars this court's jurisdiction because Briceno Garcia is attempting to use his petition to undermine his

removal proceedings. [Dkt. 9 at 2 (arguing lack of jurisdiction under § 1252(g) to review an execution of a final order of removal).] Section 1252(g) provides that "notwithstanding any other provision of law (statutory or nonstatutory) ... no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." § 1252(g). The Seventh Circuit has stated, however, that § 1252(g) "does not sweep broadly; only challenges to the three listed decisions or actions—to commence proceedings, adjudicate cases, or execute removal orders—are insulated from judicial review." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021). A detainee's claims that challenge fundamental legal errors that may violate the detainee's due process rights do not challenge the decision "to commence proceedings, adjudicate cases, or execute removal orders." *Id.*; *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("[W]e read the language to refer to just those three specific actions themselves.").

Here, Briceno Garcia's petition challenges revocation of the Order of Supervision, not the government's decision to commence proceedings, adjudicate cases, or execute removal orders. So his claim falls outside the narrow reach of § 1252(g).

*Revocation of the Order of Supervision*

Turning to the crux of the government's first argument, it says that under 8 C.F.R. § 241.13, an Order of Supervision can be revoked for two reasons, (1) violating conditions of release (which is not at issue here) or (2) "if on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." [Dkt. 9 at 6 (citing 8 C.F.R. § 241.13(i)(2).] It notes that detention for individuals with removal orders include those who are "arriving aliens or otherwise ordered removed under 8 U.S.C. § 1182(a)(7), which is what has occurred here." [*Id.* (citing 8 C.F.R. § 241.4(l).]

Section 241.4(l) grants discretion to revoke release to an Executive Associate Commissioner or, in more limited circumstances, to a District Director. 8 C.F.R. 241.4(l)(2). Specifically, "[a] district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." § 241.4(l)(2). The regulation provides that release may be revoked in the exercise of discretion when, in the opinion of the revoking official:

> (i) The purposes of release have been served;
>
> (ii) The alien violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 841.4(l)(2).

Here, the notice of revocation checks the box indicating that the reason for revocation corresponds with § 241.4(l)(2)(iii)—that "it is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal." [Dkt. 9-9 at 1.] And the government argues that Briceno Garcia's Order of Supervision was properly revoked by Douglas Thompson, Assistant Field Office Director, "who had authority to issue the decision." [Dkt. 9 at 6; Dkt. 9-10 (ERO Delegation Order).]

Thompson could revoke an Order of Supervised Release, but only upon finding that "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." § 241.4(l)(2). Otherwise, revocation must be undertaken by the Executive Associate Commissioner. The revocation here falls short. The documents the government submitted are silent as to both required findings. [Dkt. 9-9.] So the court easily concludes that revocation was unlawful because there has been no showing that the designated person assessed the public interest or considered a referral to the EAD. *Ndoye v. Joyce*, 2026 WL 765635, at *4-5 (S.D.N.Y. Mar. 17, 2026); *I.P.V. v. Maples*, 2026 WL 2321190, at *2 (S.D. Ind. Aug. 11, 2026); *Kleiss Mendoza v. Soto*, 2026 WL 3060290 (D.N.J. Oct. 13, 2026).

Section 241.4(l)(1) and § 241.13(i)(3) also impose both a notice requirement and an interview requirement, meaning that upon revocation, a noncitizen must be "notified of the reasons for revocation of his or her release" and must be provided with "an initial informal interview promptly after his or her return to Service custody." § 241.4(l)(1). Here, Briceno Garcia has met his burden of showing that the government has failed to follow these procedural requirements when revoking release. He notes that the revocation order he received was not issued until the day *after* he was taken into custody. [Dkt. 9-9 (order dated October 29, 2026).] And it is undisputed that he has not received his informal interview. [Dkt. 9 at 7 (explaining that "an informal interview regarding the revocation of his OSUP should be completed within a week.")]

Briceno Garcia's Order of Supervision was not revoked according to the process the law prescribes, so the revocation of release and his subsequent detention are contrary to law. Pursuant to the *Accardi* doctrine, "rules promulgated by a federal agency that regulate the rights and interest of others are controlling upon that agency." *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267-68 (1954) ("when the government promulgates regulations "with the force and effect of law," agencies are bound to follow their own "existing valid regulations.") Accordingly, the appropriate remedy is to restore it. *Kleiss Mendoza*, 2026 WL 3060290 at *7.

*Detention Under 8 U.S.C. § 1231*

The government also argues that Briceno Garcia's detention is lawful under 8 U.S.C. § 1231. Section 1231 governs the detention and removal of individuals subject to administrative final orders of removal. That section directs immigration officials to remove an individual with a final order of removal within 90 days, and that during that 90 day removal period, authorities "shall detain" the individual. § 1231(a)(1)(A), (2). Once the 90-day removal period expires, authorities may either release the individual pursuant to an order of supervision or may continue detention under § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court assessed continued detention under § 1231(a)(6), and concluded that it authorizes post-removal-period detention only for "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. And in the Supreme Court's view, such a "reasonably necessary" period is presumptively six months. *Id.* at 701. After that six-month period, if the individual "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," then the government must respond with evidence sufficient to rebut that showing or arrange for release. *Id.*[1]

Here, there is no dispute that Briceno Garcia is subject to a final order of removal that was issued on June 15, 2026. He argues that the 90-day removal period began to run as of that date, *see* dkt. 10 at 6, presumably under § 1231(a)(3) ("If the alien does not leave or is not removed within the [90-day] removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.") In other words, even though Briceno Garcia was physically taken into custody ten days ago on October 28, in his view, the 90-day removal period expired in mid-September (90 days after June 15). See *Duque v. Maples*, 2026 WL 32094, at *5 (S.D. Ind. Jan. 6, 2026).

Even if Briceno Garcia is correct, his detention has not yet surpassed the six month presumptive period articulated in *Zadvydas*. His reply brief acknowledges that his detention still retains the presumption of reasonableness even though he raises meaningful arguments about its unreasonableness under the circumstances. [Dkt. 10 at 9 (noting that the government has not described concrete steps taken toward removal or the procurement of travel documents, and that if he is granted lawful permanent resident status based on his pending application, he will no longer be subject to removal).]

---

[1] The government says that for Briceno Garcia to "analogize his case to potentially indefinite detention under *Zadvydas* is absurd," *see* dkt. 9 at 10, but as best the court can tell, his habeas petition never invokes that case. [Dkt. 1.]

The court need not resolve this issue now because it has concluded that the Order of Supervision was not properly revoked, and this error should be corrected.

* * *

In granting habeas relief, as in every other area of the law, "the remedy should be appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Here, though there are statutory mechanisms for detention, the government failed to apply the proper procedures for revoking the Order of Supervision. Thus, the government is directed to grant Briceno Garcia the process he was due from the beginning and, if it is unable to do so in the expeditious manner required, to release him.

Accordingly, by November 10, 2026, the government must file documentation with the court establishing that (a) the requirement under § 241.4(l)(2) that Briceno Garcia's revocation was in the public interest and circumstances did not reasonably permit referral to the EAC was satisfied; and (b) the informal interview required by § 241.4(l) has occurred. If the government is unable to take such action in the allotted timeframe, then it must release him from detention, subject to his most recent order (and conditions) of supervision.[2]

Enter: 26-cv-13301
Date: November 6, 2026

Lindsay C. Jenkins

[2] Were the court to order immediate release, the government could take the proper steps to revoke the Order of Supervision and re-detain Briceno Garcia. So as other courts have observed, the more sensible approach is to order the government to comply with its regulations and release him if it cannot do so in a timely manner. *Duque v. Maples*, 2026 WL 32094, at *6 n.2; *Barrios v. Ripa*, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) ("Even if Petitioner could establish that Respondents violated their OSUP revocation procedures, the Court finds that Petitioner's release from detention ... would not be appropriate .... Instead, the Court could order Respondents to provide Petitioner with a new Notice signed by the appropriate official and afford Petitioner a more robust interview.")